UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| LCS CORRECTIONS SERVICES, INC., § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:13-CV-287 |
| § | |
| LEXINGTON INSURANCE COMPANY, § | |
| *et al*, § | |
| § | |
| Defendants. § | |

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

This is a dispute regarding insurance coverage for a claim made against Plaintiff, LCS Corrections Services (LCS) for the death of a state prisoner while in LCS custody. Before the Court are LCS's Motion for Summary Judgment (D.E. 19) and Lexington Insurance Company's (Lexington's) Cross-Motion for Summary Judgment (D.E. 21). At issue is whether Lexington owes LCS the duty to defend the underlying litigation predicated on 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments for deliberate indifference to the decedent's serious medical needs and violation of due process. For the reasons set out below, LCS's motion (D.E. 19) seeking partial summary judgment on the duty to defend is GRANTED and Lexington's cross-motion (D.E. 21) seeking full summary judgment on all of LCS's claims is DENIED.

### FACTS

According to "Plaintiff's Fifth Amended Complaint" (D.E. 19-3) in the underlying case (Garcia action), LCS had a system-wide policy of withholding psychotropic medications from inmates in its custody. When Mario A. Garcia (Decedent) went into

LCS custody, he was taking the prescription medication benzodiazepine. Pursuant to its policy, LCS did not permit its employees or medical personnel to administer benzodiazepine to Decedent. Thus Decedent went without this medication. Despite Decedent's seizures and headaches during incarceration for which he was hospitalized, and despite medical direction to resume administration of benzodiazepine, LCS refused or failed to supply Decedent with the medication, which allegedly resulted in his death.

The Garcia action originally went to trial only on claims of medical malpractice. The § 1983 claim (based on the Eighth and Fourteenth Amendments) had been dismissed in a pretrial order. Pursuant to a post-trial motion, that count was reinstated, supplying the claim triggering this coverage dispute. The Garcia allegations reference deliberate indifference and expressly disclaim any intentional conduct on the part of LCS.

Lexington issued two primary insurance policies to LCS: a Healthcare Professional Liability policy (HPL; D.E. 21-5) and a Commercial General Liability policy (CGL; D.E. 19-1). Lexington chose to defend the Garcia action through the previous trial under the HPL. LCS now seeks a defense of the renewed § 1983 civil rights claims under the CGL policy.

LCS claims that Lexington owes it a defense under the CGL coverage supplied by the Violation of Civil Rights Endorsement and Negligent Act Endorsement (D.E. 19-1, pp. 50, 52). Lexington has denied CGL coverage pursuant to the Medical Services Exclusion (D.E. 19-1, p. 31) and argues that the claim does not fall within the terms of the Violation of Civil Rights Endorsement because the incident does not constitute an "occurrence" as defined in the coverage provisions of the base policy (D.E. 19-1, pp. 6,

22), the claim is also excluded as an "expected or intended injury" under the terms of the endorsement (D.E. 19-1, p. 7), and LCS has not demonstrated that it has met its self-insured retention (SIR) requirements under an endorsement by that name (D.E. 19-1, pp. 32-35).

## DISCUSSION

### A. Jurisdiction and Conflict of Law

This insurance contract dispute was filed pursuant to federal provisions for declaratory judgments: 28 U.S.C. § 2201 *et seq.* and Fed. R. Civ. P. 57. Plaintiff further claims diversity jurisdiction under 28 U.S.C. § 1332. According to the uncontroverted allegations in the complaint (D.E. 1), LCS is a Louisiana corporation with its principal place of business in Louisiana; Lexington is a Delaware corporation with its principal place of business in Massachusetts; and Defendant Monica Garcia, Individually and as Heir and Representative of Mario A. Garcia, Deceased and as Next Friend of P.G., a Minor, is a citizen of Texas.

The insurance policy was issued pursuant to Louisiana law (D.E. 19-1, p. 2), with coverage territory extending throughout the United States (*Id.*, p. 20). There is no choice of law provision in the policy. The death that triggered this coverage dispute took place in Texas and the claims are based on conduct that occurred in Texas. D.E. 1. The parties have not briefed any issue with respect to conflict of laws, suggesting that there are no appreciable differences between Texas and Louisiana law on the policy construction issues presented here. D.E. 19, p. 16 n.3 (specifically stating that there is no substantial difference); D.E. 21, p. 11, *et seq.* (citing both Texas and Louisiana law without

specifically addressing the conflict of laws issue). For that reason, the Court will draw from the authorities of both states, without distinction, in adjudicating this dispute.

### B. Summary Judgment Standard of Review

The interpretation of a liability insurance policy is a question of law. *See Wilbros RPI, Inc. v. Continental Casuatly Co.*, 601 F.3d 306 (5th Cir. 2010) (*per curiam*); *Southern Snow Mfg. Co. v. SnoWizard Holdings, Inc*., 921 F.Supp.2d 548 (E.D. La. 2013). In a summary judgment proceeding under Fed. R. Civ. P. 56,

> the insured must carry the burden of persuasion to establish that any uncompensated (or under-compensated) damage was caused by a covered peril. Simply put, this is what is meant by the rule that the insured must prove coverage under the policy. Then, if the defendant-insurer wishes to avoid liability by relying on a policy exclusion from coverage, it has the burden of persuasion to establish that the uncompensated or under-compensated damage is subject to an exclusion.

*Bayle v. Allstate Ins. Co*., 615 F.3d 350, 358-59 (5th Cir. 2010) (footnote excluded).

Specifically with respect to the duty to defend, the Court applies the "eight corners" rule and considers only the policy (D.E. 19-1) and the allegations in the complaint in the Garcia action (D.E. 19-3).

> According to the eight corners rule, the scope of an insurer's duty to defend against a lawsuit is determined exclusively by the allegations in the pleadings and the language of the insurance policy. *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997). The scope of the duty to defend is interpreted broadly: "Where the complaint does not state facts sufficient to clearly bring the case within or without the coverage, the general rule is that the insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *Id.* (quoting *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). "Terms in insurance

> policies that are subject to more than one reasonable construction are interpreted in favor of coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 133 (Tex. 2010).

*National Casualty Co. v. Western World Ins. Co.*, 669 F.3d 608, 612-13 (5th Cir. 2012). *See also, Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993).

Courts construe insurance policies using familiar principles of contract interpretation. *Times-Picayune Publ'g Corp. v. Zurich Am. Ins. Co.*, 421 F.3d 328, 331 (5th Cir. 2005) (quoting *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 269 (5th Cir. 1990)); *Texas Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 126 (Tex. 2004). The words of the policy are construed in their plain, ordinary, and popular sense to reflect the parties' intentions and determine the extent of coverage. *Id.* at 331-32; *Calcasieu-Marine Nat'l Bank of Lake Charles v. Am. Employers' Ins. Co.*, 533 F.2d 290, 296 (5th Cir. 1976). Finally, "the court should consider the policy as a whole, and interpret the policy to fulfill the reasonable expectations of the parties in the light of the customs and usages of the industry." *Times-Picayune*, 421 F.3d at 331 (quoting *Trinity Indus.*, 916 F.2d at 269); *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 841 (Tex. 2010).

### C. Coverage Under the Civil Rights Endorsement

LCS argues that the policy covers this claim pursuant to its general coverage of bodily injury and pursuant to Endorsement # 014, which reads as follows:

> This insurance applies to claims or "suits" arising out of "bodily injury" and "property damage" caused by alleged civil rights violations, so long as such violations and any ***resulting injury(ies) are not expected or intended*** from the

>standpoint of the insured or any person or organization either representing or acting on behalf of the insured.
>
>All other terms and conditions of the policy remain the same.

D.E. 19-1, p. 50 (emphasis added). Lexington does not dispute that the Garcia action is a suit arising out of alleged civil rights violations. What it does dispute is (1) whether the incident constitutes an "occurrence" or an "accident" under the base policy; and (2) whether the injury was "expected or intended" and excluded under the terms of the civil rights endorsement. Each of these issues will be addressed in turn.

### 1. The base policy's "occurrence" requirement.

With respect to the first issue, the endorsement refers to "bodily injury" in quotation marks, referring back to the base policy's definition. All that is required to constitute "bodily injury" is that it be "physical injury, sickness or disease, including death resulting from any of these; or the following when accompanied by physical injury, sickness or disease: mental anguish; shock; or emotional distress." D.E. 19-1, p. 49. There can be no argument that the decedent sustained a "bodily injury" under this definition. He had a physical injury, sickness or disease that resulted in his death, according to the complaint filed in the Garcia action. D.E. 19-3.

Lexington argues that it is not enough that the claim satisfy the bare definition of the term "bodily injury." It insists that LCS must demonstrate that the bodily injury was caused by an "occurrence." It is questionable whether and how the "occurrence" requirement applies when the language of the Violations of Civil Rights Endorsement does not require that the bodily injury be an "occurrence." Comparing the coverage

provisions side-by-side illustrates the odd role of the "occurrence" requirement. In the basic policy coverage, bodily injury must be "caused by an 'occurrence' . . . ." D.E. 19-1, p. 6. In the endorsement, the bodily injury must be "caused by alleged civil rights violations . . . ." D.E. 19-1, p. 50. Nothing in the endorsement requires application of the terms, "occurrence" or "accident."

However, the basic policy coverage terms provide that the policy covers only "occurrences," an essential term that informs the determination of how policy limits (and other monetary issues such as SIR) are applied. D.E. 19-1, p. 6. The policy limits are determined on a "per occurrence" basis. D.E. 19-1, pp. 1, 19. This language has the effect of requiring that the alleged bodily injury be caused by a civil rights violation that qualifies as an "occurrence." Because the Court concludes, as explained below, that the complaint in the Garcia action alleges an "occurrence," the Court does not consider the matter to raise a policy conflict or ambiguity that must be resolved at this duty to defend stage of the case.

According to the policy, "occurrence" means "an accident . . . ." D.E. 19-1, p. 22. Lexington argues that the circumstances of the Garcia action do not involve an "accident" or, hence, an "occurrence." The term "accident" is not defined in the policy. Therefore, the Court must turn to state law for construction of this undefined term.

According to Texas law, "An accident is generally understood to be a fortuitous, unexpected and unintended event," occurring "as the culmination of forces working without design, coordination, or plan." *Lamar Homes, Inc. v. Mid–Continent Casualty*

*Co.*, 242 S.W.3d 1, 8 (Tex. 2007)[1] (citations and internal quotation marks omitted). A deliberate act can be an accident if the effect is unexpected. *Id*. at 8. In Texas, deliberate acts may constitute an accident unless: (1) the resulting damage was "highly probable" because it was "the natural and expected result of the insured's actions"; or (2) "the insured intended the injury." *See id*. at 8–9. To construe every intention to engage in particular conduct as equally intending the actual result would render a policy's intentional injury exclusion superfluous. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex. 1997) (construing the term "accident" to exclude only conduct that is engaged in with an intention to produce the harm actually inflicted).

Texas law thus supports treatment of a deliberate act that produces an unintended result as an "accident." Louisiana law is even more liberal in its definition of accident, as the actor's intention is not even the focus.

> Under Louisiana law, courts interpret whether an event is an "accident" from the viewpoint of the victim; losses that the victim could not expect are the result of an accident. *See, e.g., Freeport–McMoRan Energy* [*v. Mullen*], 233 F. App'x [341] at 345 [(5th Cir. 2007) (CGL policy)]; *Jernigan v. Allstate Ins. Co.,* 269 F.2d 353, 356–57 (5th Cir. 1959) [(auto policy)]; *Tsolainos v. Tsolainos*, 59 F.Supp.2d 592, 596 (E.D. La. 1999) [(auto policy)]; [*North American Treatment Systems, Inc. v. Scottsdale Ins. Co*., 943 So.2d 429, 444 (La. App. 1st Cir. 2006) (CGL policy)]; *Gaylord Chem. Corp. v. ProPump, Inc*., 753 So.2d 349, 354 (La. Ct. App. 2000) ([CGL policy;] "Accident is defined from the viewpoint of the victim."); *see also* 15 William Shelby McKenzie and H. Alston Johnson III, LOUISIANA CIVIL LAW TREATISE: INSURANCE LAW AND PRACTICE § 6:7 (4th ed.).

---

[1] Replacing the opinion at 239 S.W.3d 236, which LCS cited at D.E. 24, p. 9 and Garcia cited at D.E. 26, p. 7.

*Bourbon Heat, LLC v. Liberty Surplus Ins. Corp.*, 2013 WL 5673582, at *4 (E.D. La. Oct. 15, 2013) (CGL policy). Construing the pleading from the Decedent's point of view, his death was an accident. Under the law of both Texas (insured's deliberate act is an "accident" if insured did not intend to cause the harm) and Louisiana (determining "accident" from the point of view of the victim), the pleading in the Garcia action alleges conduct that constitutes an "accident" and thus an "occurrence" under the policy.

### 2. The "not expected or intended" requirement.

Lexington's second argument falls along the same lines as does its first. Lexington argues that LCS or its employees "expected or intended" the bodily injury, thus falling outside the scope of the civil rights endorsement. This argument is defeated both by the express allegations in the Garcia action and by the nature of an Eighth Amendment claim for deliberate indifference to serious medical needs.

The Garcia complaint specifically alleges that "such [civil rights] violations and such injury were not expected or intended from the standpoint of LCS or any person acting in behalf of LCS . . . ." D.E. 19-3, p. 6. This language expressly excludes a claim for damages based on an injury that LCS intended to inflict. When determining the duty to defend, the duty is triggered if any claim falls within coverage. *E.g., National Casualty Co., supra*.

Lexington argues that the focus must be on the factual allegations that show the origin of the damages and not on the particular theories alleged. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997) (*per curiam*).

However, there is no evidence before the Court that withholding benzodiazepine (the factual allegation) naturally and expectedly results in death.

Lexington next argues that the constitutional violation which requires "deliberate indifference" is necessarily equivalent to causing an expected or intentional result. This argument fails. According to the Supreme Court, the test for determining deliberate indifference is "subjective recklessness" that "lies somewhere between the poles of negligence at one end and purpose or knowledge on the other." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Because the pleading specifically disclaims an intentional act, the deliberate indifference claim does not eliminate potential coverage.

Consequently, the pleadings state a claim that falls within coverage supplied by the Violations of Civil Rights Endorsement to the CGL policy.[2] Lexington has a duty under its CGL policy to defend LCS from the claims in the Garcia action. The fact that Lexington may already be defending under its HPL policy is irrelevant. "The CGL policy covers what it covers. No rule of construction operates to eliminate coverage simply because similar protection may be available through another insurance product." *Lamar, supra* at 10.

### D. The Self-Insured Retention Requirement

Lexington argues that LCS has not demonstrated that it has satisfied the SIR with respect to the CGL policy. D.E. 19-1, pp. 32-35. LCS has responded with the Affidavit of Richard Harbison (D.E. 24-1), demonstrating that LCS has paid $150,000.00 for legal

---

[2] Because the Court finds coverage under the Violations of Civil Rights Endorsement, the Court does not address coverage under the separate Negligent Act Endorsement invoked by LCS. D.E. 19-1, p. 52.

services and expenses related to the Garcia action—the "occurrence" at issue here. The affidavit states that those monies were spent for expenses that fall within the definition of "Allocated Loss Adjustment Expenses" (ALAE) under the SIR Endorsement. D.E. 19-1, p. 35.

Lexington counters that the policy provides: "There will be no reduction of the Retained Limit because of payment of claims or "suits" arising from claims or "suits" for which coverage is not afforded by the policy." D.E. 19-1, p. 32 (SIR Endorsement). In particular, Lexington complains that the affidavit does not establish whether monies were paid on the health care liability claim that is covered under the HPL policy but not the CGL policy.

Lexington's argument fails under the terms of the policy. The SIR Endorsement defines both ALAE and "claim." D.E. 19-1, p. 35. They are not the same thing. ALAE refers to defense expenses. *Id.* "Claim," which is defined in terms of a suit, refers to a written demand for monetary damages. *Id*. A "suit" is a civil proceeding seeking damages for "bodily injury" and "property damage." D.E. 19-1, p. 23. The policy does not allow a reduction of the retained limit for payment of a claim that is not covered by the CGL policy. The policy does allow a reduction for ALAE defense costs attributable to the Garcia action which involves the same "occurrence" that is covered by the CGL policy.

LCS has demonstrated that it has exhausted its SIR for the "occurrence" as required by parts I and II(A) of the SIR Endorsement. Lexington has not raised a disputed issue of material fact regarding whether the $150,000 that has been paid was

11 / 17

paid for ALAE regarding this "occurrence." Thus, the Court holds that LCS has satisfied the SIR requirement and the duty to defend is triggered.

### E. The Medical Services Exclusion

Lexington argues that the Garcia claim is subject to the Medical Services Exclusion which excludes coverage for liability "arising out of the rendering or failure to render 'Medical Services.'" D.E. 19-1, p. 31. "Medical Services" is defined, in relevant part, as:

> a) medical, surgical, dental or nursing treatment to such person or the person inflicting the injury including the furnishing of food or beverages in connection therewith; [or]
>
> b) furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances if the injury occurs after the Named Insured has relinquished possession thereof to others . . . .

D.E. 19-1, p. 31.

Lexington seeks a broad interpretation of the exclusion, eliminating coverage for any claim "arising out of" medical services, which Lexington argues includes any type of health care liability claim. The phrase "arising out of" is broadly construed in a policy exclusion. *Scottsdale Ins. Co. v. Texas Security Concepts and Investigation*, 173 F.3d 941, 943 (5th Cir. 1999) (*per curiam*). The same is true in construing that phrase in an endorsement that extends coverage. *McDaniels v. Great Atlantic & Pacific Tea Co.*, 602

F.2d 78, 82 (5th Cir. 1979).³ Both the Medical Services Exclusion and the Violations of Civil Rights Endorsement use "arising out of" language so construction of "arising out of" will not resolve this issue. Additionally, the definition of "medical services" limits the scope of the exclusion.

LCS argues that the allegation in the Garcia complaint that LCS had a policy of withholding certain drugs does not involve the rendering of medical services. Lexington counters that the interpretation of coverage or exclusion of a claim is based on the facts alleged rather than the theory applied, *National Union, supra*, and thus the alleged policy cannot be separated from the failure to render the medical services.

A claimant cannot artfully plead a claim into policy coverage by casting the claim in terms that fall outside of an applicable exclusion. If the incident is properly understood as involving the same conduct and the same causation as an excluded risk, it is excluded. This is referred to as the concurrent causation rule. *E.g.*, *Scottsdale, supra* (the assault, battery, false imprisonment, and forcible restraint claims involved a single conduct/duty issue and a single causation issue, so the false imprisonment and forcible restraint claims were excluded by the assault and battery exclusion); *Guaranty National Insurance Co. v. North River Insurance Co.*, 909 F.2d 133, 137 (5th Cir. 1990) (the same event involved separate claims sounding in separate legal theories because the conduct/duty and causation associated with the medical malpractice issue were different from the conduct/duty and causation issues associated with the administrative error of

---

³ The *McDaniel* interpretation of the "possession" requirement of an omnibus clause—an issue unrelated to this case—was disapproved in *Sturgeon v. Strachan Shipping Co.*, 731 F.2d 255 (5th Cir. 1984). *Travis v. Commercial Union Ins. Co.*, 569 So.2d 115, 120 (La. App. 1st Cir. 1990).

failing to properly maintain the facility in which the patient was housed). This rule is relevant only if an exclusion applies to the facts alleged.

The question here is whether LCS's alleged refusal to furnish or dispense benzodiazepine to the Decedent constitutes a "medical service" as defined by the exclusion. Lexington argues that the first definition applies and excludes the claim. LCS argues that the second applies which limits the exclusion to liability arising out of furnishing or dispensing of drugs if the injury occurred after LCS relinquished possession of the drug, and because the facts do not fit within this definition, the exclusion does not apply. Lexington suggests that, because the meanings are connected with the disjunctive "or," if any one meaning will cause the claim to be excluded, then the claim must be excluded. The issue for the Court is how to read these different definitions together and apply the result to the factual allegations that make up the Garcia claim.

The Court agrees with the interpretation of the exclusion proffered by LCS. The Garcia action complains that LCS failed to furnish or dispense the drug, benzodiazepine, to the Decedent. Under a plain reading of the policy terms, conduct related to furnishing or dispensing medication is excluded as a "medical service" only if the injury took place after LCS relinquished possession of the drug. Because LCS never relinquished possession, the complained-of act was not a "medical service" and the exclusion does not apply. This is consistent with the more general rule of construction of policy exclusions:

> In assessing whether the allegations in a complaint fall within the scope of an exclusion, a reviewing court must interpret the complaint liberally and construe the exclusion narrowly, resolving any ambiguity in favor of the insured. If the insured proffers a reasonable interpretation of the exclusion

> favorable to coverage, a reviewing court must accept it, even if the insurer proffers an interpretation negating coverage that is "more reasonable or a more accurate reflection of the parties' intent."

*City of College Station, Texas v. Star Ins. Co.*, 735 F.3d 332, 337-38 (5th Cir. 2013) (footnotes omitted); *Garcia v. St. Bernard Parish School Board*, 576 So.2d 975 (La. 1991).

Further, rules of contract construction provide that the more specific provision governs over the more general:

> For example, when a contract provision makes a general statement of coverage, and another provision specifically states the time limit for such coverage, the more specific provision will control. See 3 Arthur L. Corbin, CONTRACTS §§ 545–54 (1960). This is but an application of our long-established rule that "[n]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Guardian Trust Co. v. Bauereisen*, 132 Tex. 396, 121 S.W.2d 579, 583 (1938); *see also Wynnewood State Bank v. Embrey*, 451 S.W.2d 930, 932 (Tex. Civ. App.—Dallas 1970, writ ref'd n.r.e.).

*Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133-34 (Tex. 1994) (construing a major medical policy). Choosing the general definition over the specific definition, as Lexington asks, would fail to give meaning to the second provision. The second definition, as the more specific, is the one that must govern. That construction allows both meanings to co-exist with purpose. Consequently, the Medical Services Exclusion does not apply.

## F.  Judicial Estoppel and Quasi-Estoppel

Last, Lexington argues that LCS cannot deny that the Garcia claim is one for "medical services" because LCS has represented to the Garcia trial court that the statutory limitations of liability for Texas health care claims under the Texas Medical Liability Act, Tex. Civ. Prac. & Rem. Code § 74.001 *et seq*. (TMLA), apply to reduce the jury's damage award on the medical malpractice phase of that case.  When a party assumes a certain position in a legal proceeding and succeeds in maintaining that position, that party may not thereafter assume a contrary position.  *State of New Hampshire v. State of Maine*, 532 U.S. 742, 749 (2001).  Judicial estoppel is an equitable doctrine, applied pursuant to the court's discretion.  *Hall v. GE Plastic Pacific PTE, Ltd*., 327 F.3d 391, 395 (5th Cir. 2003).  Similarly, quasi-estoppel prevents a party from asserting, to another's disadvantage, a right inconsistent with a position the party previously took.  *Lopez v. Munoz, Hockema & Reed, LLP*, 22 S.W.3d 857, 864 (Tex. 2000).

This argument assumes that "health care" pursuant to the TMLA is the same thing as "medical services" under the CGL policy exclusion.  This assumption is incorrect.  The TMLA definitions of "health care," "health care provider," and "health care liability claim" are quite expansive.  Tex. Civ. Prac. & Rem. Code § 74.001(a)(10), (12), (13).  Nowhere in the TMLA is there a provision that "health care" means "furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances *if the injury occurs after the defendant has relinquished possession thereof to others*" as in the policy before the Court.  D.E. 19-1, p. 31.  There is nothing inconsistent in LCS seeking

to limit its liability to the Garcia plaintiffs under the TMLA while maximizing its insurance coverage under its CGL policy.

Furthermore, LCS's position with respect to the medical malpractice claim is not taken to the detriment of Lexington because, by seeking to reduce the damage award in that case, it could reduce Lexington's liability on the HPL policy. Lexington has stated unequivocally that it is defending the Garcia action under the HPL policy and presumably is controlling the defense by which LCS has asserted the benefits of the TMLA. The Court declines to apply judicial estoppel or quasi-estoppel principles to prevent LCS from seeking coverage under its CGL.

## CONCLUSION

For the reasons set out above, the Court GRANTS LCS's Motion for Summary Judgment (D.E. 19) and enters partial summary judgment that Lexington has the duty to defend the § 1983 claims in the Garcia action. The Court DENIES Lexington's Cross-Motion for Summary Judgment (D.E. 21) in its entirety because it owes the duty to defend and the question regarding the duty to indemnify is premature.

ORDERED this 13th day of March, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE