UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LCS CORRECTIONS SERVICES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:13-CV-287 |
| | § | |
| LEXINGTON INSURANCE COMPANY, | § | |
| *et al*, | § | |
| | § | |
| Defendants. | § | |

# ORDER

Before the Court is Defendant Lexington Insurance Company's Motion for Summary Judgment as to Umbrella Policy (D.E. 29). Lexington Insurance Company (Lexington) seeks partial summary judgment that it has no duty to defend or to indemnify Plaintiff LCS Corrections Services, Inc. (LCS) under its umbrella policy, arguing that the allegations of the underlying claim do not state an "occurrence,"[1] and that the professional services exclusion applies. LCS argues that the motion is premature with respect to the duty to indemnify, and it defends against the substantive arguments presented by Lexington. For the reasons set out below, the motion is GRANTED.

## FACTS

The underlying case, brought by Monica Garcia, Individually and as Heir and Representative of the Estate of Mario A. Garcia, Deceased and as Next Friend of P.G., a Minor (Garcia Lawsuit), involves the death of a prisoner while in LCS custody, allegedly

---

[1] This Court previously determined, on the basis of similar arguments addressing Lexington's CGL policy, that the claims in the Garcia Lawsuit constitute an "accident" that supports a finding of an "occurrence" under the policy. Because of the Court's ruling on the professional liability exclusion with respect to the Umbrella Policy, it is unnecessary to revisit the "occurrence" question.

due to LCS's policy of not giving inmates scheduled medications. Garcia sued LCS, alleging both medical malpractice and civil rights claims. Because of pretrial rulings, only the medical malpractice allegations went to trial, and the Garcias obtained a jury verdict for substantial damages. This case arises because the trial judge in the Garcia Lawsuit has now ordered the civil rights claims to go to trial.

Lexington issued two primary insurance policies to LCS: a Healthcare Professional Liability Policy (HPL) and a Commercial General Liability Policy (CGL). Lexington chose to defend the Garcia Lawsuit through the previous trial under the HPL. This Court, pursuant to previous motions for summary judgment, held that Lexington's CGL policy provides coverage for the underlying civil rights claims sufficient to support the duty to defend. D.E. 28. The question now before the Court is whether Lexington is entitled to summary judgment that it owes no duty to defend or to indemnify under its Commercial Umbrella Liability Policy number 1776295 (CUL). D.E. 29-2; D.E. 32-3.

**A. The Professional Liability Exclusion and the Duty to Defend**

CUL Endorsement #008, entitled "Professional Liability Exclusion", states:

> It is agreed that this policy shall not apply to liability arising out of the rendering of or failure to render professional services, or any error or omission, malpractice or mistake of a professional nature committed by or on behalf of the "Insured" in the conduct of any of the "Insured's" business activities.

D.E. 29-2, p. 49; D.E. 32-3, p. 45. LCS asserts that this exclusion does not apply because the remaining allegations in the Garcia Lawsuit, couched in civil rights terms, address an administrative policy—rather than a professional decision—regarding the blanket

deprivation of certain medications to inmates. The underlying complaint alleges, "There was no professional or medical discretion exercised in the failure to supply Mr. Garcia his medications. Rather, it was Defendant LCS's company policy, . . . administered by non-medical and non-professional management personnel . . . not to give inmates scheduled medications such as those prescribed to Mr. Garcia." (Civil Action No. 2:11-cv-4, D.E. 239, ¶ 7).

The scope of coverage is to be ascertained by examining the policy as a whole and determining the parties' intent. *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004). Terms are given their ordinary meaning unless the insurance policy shows that the words were meant in a technical or different sense. *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 736 (Tex. 1990). The court must "read all parts of the contract together . . . striving to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative." *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998) (citations omitted).

LCS argues that under *Utica,* a professional liability exclusion does not negate the duty to defend when there is an allegation that the underlying injury was caused by the breach of a non-professional standard of care. *Utica* does state: "We conclude that TPCIGA and American Indemnity's interpretation—that the policy excludes coverage only when the plaintiff's injury is caused by the breach of a professional standard of care—is reasonable." *Id*. at 202.

However, *Utica* involved a much different fact scenario than the one presented here. In *Utica*, the underlying lawsuit involved claims against an association of doctors

by plaintiffs who contracted Hepatitis C from contaminated drugs. *Id*. at 200. The drugs were contaminated by a technician who was a drug addict and was infected with Hepatitis C. Using a syringe, he removed the drug from the glass ampoules, injected himself with the drug, and then injected saline solution back into the ampoules. *Id*. The plaintiffs alleged both professional and general liability. *Id*. at 204. The insurer conceded that the claim for failure to secure the drugs could be covered under its general liability policy but argued that because the doctors later rendered a professional service by injecting the patients with the drug, the professional services exclusion precluded coverage. *Id*. at 201-02. The court held that the insurer had a duty to defend because there were allegations of a breach of a non-professional standard of care. However, the court remanded regarding the indemnity issue for a determination of whether the doctors breached a professional standard of care so that the court could determine whether the case involved concurrent causes. If the infection was caused only by the doctors' negligent administration of the drug, the exclusion applied and the insurer had no duty to indemnify. If the doctors breached both professional and non-professional standards of care by failing to properly supervise the technician and by exposing the plaintiffs to the contaminated drugs, the exclusion would apply under the concurrent causation doctrine. If the doctors did not breach the professional standard of care, then the exclusion would not apply. *Id*. at 204-05.

      The Fifth Circuit addressed the professional services exclusion in *Admiral Ins. Co. v. Ford*, 607 F.3d 420 (5th Cir. 2010). In *Admiral*, the insured had contracted to provide professional services in drilling an oil well. The opinion states:

4 / 7

> Aside from Exco's bald statement that certain (unspecified) acts were non-professional, the only arguably non-professional conduct alleged was failing to look for metal shavings or to use a magnet to detect shavings in mud. The actual performance of these acts is perhaps akin to conduct that we have found to be non-professional. But Exco is not suing Ford because Ford was told to watch for pipe wear and metal shavings and failed to do so. Rather, the complaint is that Ford failed to act upon its specialized knowledge that those tasks needed to be performed (i.e., Ford failed to instruct the mud logger to look for shavings). Indeed, the specific failures are listed as sub-parts of a general failure "to perform adequate and competent drilling operations." In other words, the allegations are not that Ford incorrectly performed some non-professional activity, but that Ford failed to properly implement a plan to drill a well over 16,000 feet deep.

*Id*. at 426. The Fifth Circuit, applying the eight corners rule and focusing on the factual allegations, excluded coverage of the claim for an error in performing a menial task because it was merely one part of the implementation of the professional services rendered. Thus the application of the professional services exclusion depends on the factual allegations and cannot be based only on whether the allegations reference the breach of a professional standard of care.

The issue here is Garcia's death resulting from the deprivation of medication, the need for which could only be ascertained by someone with medical expertise. LCS argues that the claims address administrative rather than professional conduct because it was a global administrative decision to deprive inmates of this particular medical care. But that distinction is unavailing. The professional services exclusion has two parts: "[1] liability arising out of the rendering of or ***failure to render professional services***, or [2] any error or omission, malpractice or mistake of a professional nature . . . ." D.E. 29-2, p.

49 (emphasis added). Where an administrative decision results in the failure to render professional services, the exclusion applies according to its plain meaning.

The duty to defend arises only when the allegations are within policy coverage under the "eight corners" rule. *Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 393 (5th Cir. 1995); *National Union Fire Ins. Co. v. Merchants Fast Motor Lines*, 939 S.W.2d 139, 141 (Tex. 1997); *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993). Because the allegations are subject to the policy exclusion for professional services, Lexington does not have a duty to defend LCS in the Garcia Lawsuit.

### B. The *Griffin* Holding and the Duty to Indemnify

Ordinarily, the duty to indemnify cannot be determined until the facts are actually established by trial in the underlying lawsuit. *Burlington Northern and Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co.*, 334 S.W.3d 217, 219 (Tex. 2012). However, if the reason that the claim falls outside the duty to defend also negates the duty to indemnify, the court can adjudicate the duty to indemnify at the pleading stage as a ripe controversy. *Farmers Texas County Mutual Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997) (*per curiam*).

In *Griffin*, the Supreme Court of Texas held that "the duty to indemnify is justiciable . . . when the insurer has no duty to defend *and the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify."* Id. at 84. In *Griffin*, the Court found: "No facts can be developed in the underlying tort suit that can transform a drive-by shooting into an 'auto accident.'" Consequently, the insurer there had no duty to defend, and, for the same reason, had no

duty to indemnify.  Likewise, no facts can be developed in the Garcia Lawsuit that can transform the failure to administer medication into an administrative policy unrelated to the failure to render professional medical services.  Lexington does not have a duty to indemnify LCS regarding the allegations in the Garcia Lawsuit.

## CONCLUSION

For the reasons set out above, the Court GRANTS Defendant Lexington Insurance Company's Motion for Summary Judgment as to Umbrella Policy (D.E. 29) on the basis that the Professional Liability Exclusion excludes coverage of all claims arising from the facts pled in the Garcia Lawsuit.

ORDERED this 5th day of May, 2014.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE